# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS - FORT WORTH DIVISION

| | | |
|---|---|---|
| ALAN SNIDER, §<br>*Plaintiff,* §<br>§<br>*v.* §<br>§<br>SCOTT CAIN, §<br>and CITY OF CLEBURNE §<br>*Defendants.* § | | Civil Action No. _____ |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff Alan Snider to present this complaint for deprivation of his civil liberties against the Defendant City of Cleburne ("City") and its mayor, Defendant Scott Cain, such violated liberties including the right to travel guaranteed by the Texas and United States Constitutions.

Summarizing, Plaintiff was cited for entering an "essential business" with his wife, allegedly violating Cleburne Mayor Cain's Emergency Management Plan, which disallowed more than one person per household to travel for essential tasks. Plaintiff received a citation for up to $1,000 and 180 days of jail time.

Plaintiff seeks invalidation of the Order as violating the right to travel, damages under 42 U.S.C. 1983, and a declaration under Texas law that the Defendants' executive order violates fundamental rights protected by the United States Constitution and the Texas Constitution, as Defendants have no basis to prevent joint travel of husband and wife or their freedom to assemble together.

# I. PARTIES

1. Plaintiff Alan Snider is an individual residing at 10208 County Road 418; Grandview, Texas, 76050. He can be reached through the undersigned counsel.

2. Defendant Scott Cain is the mayor of the City of Cleburne. He can be served through the City of Cleburne's City Secretary Ivy Peterson at 10 N Robinson Street PO Box 677 Cleburne, TX 76033.

3. Defendant City of Cleburne is a municipality in the State of Texas and may be served with process by serving the City Secretary Ivy Peterson listed above.

# II. VENUE AND JURISDICTION

4. This Court has subject-matter jurisdiction over this suit because it arises under U.S. CONST. amend. I. "Congress shall make no law … abridging … the right of the people peaceably to assemble." 28 U.S.C. § 1331 (Federal Question).

5. This Court has subject-matter jurisdiction over this suit because it arises under U.S. CONST. amend. XIV. "Nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." 28 U.S.C. § 1331 (Federal Question).

6. This Court has subject-matter jurisdiction over this suit, based on the fundamental right to travel recognized by Congress in federal law. "Freedom to travel is, indeed, an important aspect of the citizen's "liberty." … [W]e deal here

with a constitutional right of the citizen, a right which we must assume Congress will be faithful to respect." *Kent v. Dulles*, 357 U.S. 116, 130 (1958).

7. To ensure clarity, this Court has subject-matter jurisdiction over this suit even when the State of Texas is the actor, rather than Congress. "A state law implicates the right to travel when it actually deters such travel." *Attorney Gen. of N.Y. v. Soto-Lopez*, 476 U.S. 898, 903 (1986). *See also Long v. Barr*, No. 1:15-cv-1642, 2020 U.S. Dist. LEXIS 59114, at *48-52 (E.D. Va. 2020).

8. This action is brought under the Civil Rights Act of 1871, 42 U.S.C. §§ 1983, 1985 which provides redress to those deprived of civil rights under color of state law against those who work and conspire toward that end under 28 U.S.C. § 1343(a)(3)(4) and § 1331.020).

9. The Court has authority to grant declaratory relief, pursuant to the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. Remedies are available under 42 U.S.C. § 1983.

10. Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b) and 1400(b) because a substantial events giving rise to the described claims occurred within the geographic area of the jurisdiction of the Northern District of Texas.

## III. FACTS

11. On the morning of April 18, Alan Snider and his wife visited a Walmart store in Cleburne. He was stopped by a Cleburne Police Officer and cited for "VIOLATION 1: VIOLATION OF EMERGENCY MANAGEMENT PLAN" because he was traveling with his wife. (See Exhibit 1.)

12. The citation itself states that Mr. Snider violated the Mayor's Emergency Management Plan, which appears to include Executive Order No. 7, issued by Mayor Cain, and requires that all travel for essential services be carried out by a single member of a household, barring some caregiver exemptions, and is enforced by fines up to $1000 and confinement of up to 180 days. Order No. 7 is attached as Exhibit 2 and the relevant paragraph is faithfully copied below:

> 7. All persons may leave their residences to provide or obtain essential services or engage in essential daily activities so long as the necessary precautions are maintained to reduce the transmission of COVID-19 and to minimize in-person contact with people who are not in the same household. <u>Each act by a person to obtain essential services or engage in essential daily activities, with the exception of 7.c (engaging in outdoor activities), shall be practiced by a single member of a household</u> unless there is no guardian or caregiver available to care for other members of the household who require supervision or assistance.

13. Mayor Cain's Executive Order No. 8, issued April 20 and valid through April 28, also required that a single member of a household be used to obtain essential services. Later executive orders do not contain the single-member restriction on households to obtain essential services.

14. All of Mayor Cain's executive orders claim power from Governor Abbott's Executive Orders. When Mayor Cain issued his Order No. 7, Governor Abbott's Executive Order GA-14 (attached as Exhibit 3) was active, which specifically did not prohibit people from accessing essential services or engaging in essential daily activities, as indicated from the third paragraph from page three of the GA-14:

> This executive order does not prohibit people from accessing essential services or engaging in essential daily activities, such as going to the grocery store or gas station, providing or obtaining other essential services, visiting parks, hunting or fishing, or engaging in physical activity like jogging or bicycling, so long as the necessary precautions are maintained to reduce the transmission of COVID-19 and to minimize in-person contact with people who are not in the same household.

15. Governor Abbott's executive orders state that local authorities cannot issue rules which are more restrictive than his own. None of Governor Abbott's orders include a "one person per household" maximum for traveling on essential tasks, but rather prohibits restrictions inconsistent with the governor's orders.

> This executive order shall supersede any conflicting order issued by local officials in response to the COVID-19 disaster, but only to the extent that such a local order restricts essential services allowed by this executive order or allows gatherings prohibited by this executive order. I hereby suspend Sections 418.1015(b) and 418.108 of the Texas Government Code, Chapter 81, Subchapter E of the Texas Health and Safety Code, and any other relevant statutes, to the extent necessary to ensure that local officials do not impose restrictions inconsistent with this executive order, provided that local officials may enforce this executive order as well as local restrictions that are consistent with this executive order.

16. Neither Mayor Cain's Order No. 7, nor Governor Abbot's GA-14 Executive Order, is in effect today, but both Governor Abbott and Mayor Cain have shown no reluctance to return to travel restrictions if COVID-19 or another virus returns.

## IV. APPLICABLE LEGAL AUTHORITIES

17. The issue is whether the mayor of a Texas city can issue executive orders preventing and controlling travel based on a delegation of power from a Texas Governor under Section 418 of the Texas Government Code.

**A. The Right to Travel is a recognized constitutionally protected right.**

18. Texas authorities, including former Attorney General Jim Mattox have recognized that the First Amendment protects an individual's travel as one of the rights protected from excessive governmental limitations, also referencing Sections 6, 8, and 27 of the Texas Bill of Rights. 1987 Tex. AG LEXIS 90, *9-10.

19. Federal authority also supports judicial enforcement by federal courts to prevent state violation of the right to travel. For example, the Supreme Court held unconstitutional a one-year residence requirement for welfare assistance based on the 14th Amendment's Equal Protection Clause, finding that the challenged laws violated the exercise of the right to interstate travel based on a classification created by the waiting period.

20. The court held that states have an interest in preventing fraud and reducing costs, but the classification imposed is impermissible where less drastic measures were available to protect state interests.

21. The Court held that even if Congress appeared to authorize states to adopt such classifications, states may not violate the Equal Protection Clause with such

practices. *Shapiro v. Thompson*, 394 U.S. 618, 621, 89 S. Ct. 1322, 1324 (1969).

22. Though not enumerated in the Bill of Rights, federal courts have recognized the freedom to travel as a constitutional right. "Freedom to travel is, indeed, an important aspect of the citizen's liberty. "… [W]e deal here with a constitutional right of the citizen, a right which we must assume Congress will be faithful to respect." *Kent v. Dulles*, 357 U.S. 116, 130 (1958).

23. Some courts have distinguished between constitutional protections as related to interstate and intrastate travel, but in *Johnson v. City of Cincinnati*, the Sixth Circuit held that "[i]n addition to its solid historical foundation, the tremendous practical significance of a right to localized travel also suggests that such a right is secured by substantive due process. The right to travel locally through public spaces and roadways - perhaps more than any other right secured by substantive due process - is an everyday right, a right we depend on to carry out our daily life activities. It is, at its core, a right of function." *Johnson v. City of Cincinnati*, 310 F.3d 484, 498 (6th Cir. 2002). The court quotes Justice Douglas, stating:

> "Freedom of movement at home and abroad, is important for job and business opportunities - for cultural, political, and social activities - for all the commingling which gregarious man enjoys. Those with the right of free movement use it at times for mischievous purposes. But that is true of many liberties we enjoy. We nevertheless place our faith in them, and against restraint, knowing that the risk of abusing liberty so as to give rise to punishable conduct is part of the price we pay for this free society."

*Id.* citing *Aptheker v. Sec. of State*, 378 U.S. 500, 519 (1964)(Douglas, J., conc.).

24. Additionally, federal courts are empowered to protect the right to travel. "A state law implicates the right to travel when it actually deters such travel." *Attorney Gen. of N.Y. v. Soto-Lopez*, 476 U.S. 898, 903 (1986).

25. Every case addressing emergency measures in federal court must address the Supreme Court's holding that "at times, under the pressure of great dangers," an individual's liberty may be subjected to some restraint "by reasonable regulations, as the safety of the general public may demand." *Jacobson v. Massachusetts*, 197 U.S. 11, 29 (1905). Though state actors are quick to cite *Jacobson*, they often neglect the court's careful emphasize that that "if a statute purporting to have been enacted to protect the public health, the public morals or the public safety, has no real or substantial relation to those objects, or is, beyond all question, a plain, palpable invasion of rights secured by the fundamental law, it is the duty of the courts to so adjudge, and thereby give effect to the Constitution." *Id*. at 31. And adding to that exception, the court stated "the police power of a State, whether exercised by the legislature, or by a local body acting under its authority, may be exerted in such circumstances or by regulations so arbitrary and oppressive in particular cases as to justify the interference of the courts to prevent wrong and oppression." *Id.* at 38.

**B. As a rule of construction, the Ninth Amendment clarifies to protect rights.**

26.     The Ninth Amendment was added to the Bill of Rights to quell Federalists' fears that an enumeration of rights would evolve to become the only rights protected. While substantial dispute on the issue exists, the Ninth Amendment is, at the very least, a rule of interpretation and construction which should require courts to interpret statutes so that unenumerated rights are not infringed.[1]

27.     As relevant to this case, even if an executive order is one that *can* be interpreted to restrict travel based on a rational basis, the Ninth Amendment requires avoiding interpretations of laws to restrict travel when a grant of power or law is unclear – else the Ninth Amendment is not a rule of interpretation or construction, but is meaningless.

28.     Thus, if an executive order issued by the Governor allows local authorities to restrict travel in a particular way, and also states that local authorities may only create laws that comport with the Governor's orders, the local authorities only *may* restrict the right to travel in a way approved by the Governor's orders.

29.     Both the power handed down and the local executive issuing its own rules must respect the contours of the long-found existing right to travel, and courts should invalidate any asserted order which infringes such a right, whether issued by a governor or a mayor.

---

[1] ARTICLE: THE NINTH AMENDMENT AS A RULE OF CONSTRUCTION, 111 Colum. L. Rev. 498, 501 (Williams).

## C. Municipalities are not immune to § 1983 claims.

30.     Cities are not immune from tort liability when they have a policy or custom that results in a constitutional injury. *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 113 S. Ct. 1160, 1162 (1993).

## D. Governor Abbot's executive orders may themselves be unenforceable because the Texas Disaster Act of 1975 includes unconstitutional delegations of the Legislature's lawmaking power.

31.     The Legislature failed to include adequate and sufficient standards to guide the discretion conferred to members of the executive branch (local or state) in the provisions of the Texas Disaster Act of 1975.

32.     Section 418.108(g) of the Texas Disaster Act of 1975 was added in 2005 following a particularly harsh hurricane season. [2]   According to the bill analysis, C.S.H.B 3111 was filed in response to a "recommendation by the Office of Homeland Security . . . to clarify local officials' authority with regards to evacuation mandates" and "gives the County Judge, or the Mayor of a Municipality the authority to order an evacuation in an emergency and it allows them to control ingress and egress from a disaster area."[3]

33.     The problem, however, is that provisions of the Texas Disaster Act of 1975 ("Act") represent a carte blanc delegation of legislative power, and not the

---

[2] *See* H.B. 3111, 79th R.S. (2005) Senate Research Bill Analysis; https://capitol.texas.gov/tlodocs/79R/analysis/pdf/HB03111E.pdf; H.B. 3111, 79th R.S. (2005) House Committee Report; https://capitol.texas.gov/tlodocs/79R/analysis/pdf/HB03111H.pdf
[3] *Id*. House BA

"delegation of power to enforce and apply law." *See Tex. Boll Weevil Eradication Found. v. Lewellen*, 952 S.W.2d 454, 465-66 (Tex. 1997). Furthermore, even though the Texas Supreme Court has said that the Legislature may delegate legislative power to local governments, administrative agencies, and even private entities under certain conditions (*see FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 873 (Tex. 2000), it also well established that that "legislative power cannot be delegated to the executive branch, either directly or to an executive agency." *State v. Rhine*, 297 S.W.3d 301, 306 (Tex. Crim. App. 2009).

34. The statute empowers local officials to proscribe lawful activities of the citizens of this state in their sole discretion. It allows them to craft policy without any procedural safeguards to prevent arbitrary, unreasonable, or oppressive orders.

35. It is true that state law designates Mayor Cain as the emergency management director for his political subdivision. TEX. GOV'T CODE § 418.1015(a). While 418.1015(b) provides that as "[a]n emergency management director [the Mayor] serves as the governor's designated agent in the administration and supervision of duties under" Chapter 418 of the Government Code further provides that the mayor, "as [a]n emergency management director may exercise the powers granted to the governor under [Chapter 418 of the Government Code] on an appropriate local scale." TEX. GOV'T CODE § 418.1015(b).

36. The problem, however, is that many of the powers granted to mayors, county judges, and even the Governor by the Texas Disaster Act of 1975 are prohibited by the Constitution. For example, in contravention of Tex. Const, art. I, § 28, Sec. 418.019 of the Act gives the governor the power "suspend or limit the sale, dispensing, or transportation of . . . firearms . . ." TEX. GOV. CODE § 418.019.

37. Moreover, Sec. 418.173 authorizes the governor, mayors, and county judges to make the violation of either of their executive orders a criminal offense punishable by a fine not to exceed $1,000 or confinement in jail for up to 180 days. TEX. GOV. CODE § 418.173(a)-(b). This provision is an improper delegation of the power to define crimes—a power that rests exclusively with the Legislature. *See Neil v. State*, No. 12-16-00236-CR, 2017 Tex. App. LEXIS 8862, at *3 (Tex. App.—Tyler Sep. 20, 2017) ("The legislature has the exclusive authority to define crimes and to designate the punishments for those crimes."); *Rodriguez v. State*, No. 12-16-00238-CR, 2017 Tex. App. LEXIS 3898, at *3 (Tex. App.—Tyler Apr. 28, 2017) ("The authority to define crimes, and to fix punishments for those crimes, is vested exclusively in the legislature.").

38. As the Texas Supreme Court has stated, "[W]hen constitutional rights are at stake, courts cannot automatically defer to the judgments of other branches of government." *In re Salon A La Mode*, 63 Tex. Sup. Ct. J. 1123, 1123, 2020 Tex. LEXIS 389, at *3 (Tex. May 5, 2020).

39.   Further, courts recognize unconstitutional attempts to exercise police powers not conferred by the Constitution as invalid. *Constantin v. Smith*, 57 F.2d 227, 237-38 (E.D. Tex. 1932) (*aff'd by Sterling v. Constantin*, 53 S. Ct. 190, 197 (1932)) ([If] the actions of the Governor and of his subordinates here complained of are valid exercises of the police power of the state, they are not contrary to, they accord with, they do not violate, they conform to, the law. On the contrary, *if they represent attempts to exercise police power not conferred upon the Governor, they are invalid under both Constitutions.*") (emphasis added).

## V.   CLAIM: DEPRIVATION OF DUE PROCESS (42 USC § 1983)

40.   Plaintiff seeks damages from Defendants City of Cleburne and Scott Cain for their infringement of Plaintiff's right to travel and assemble under 42 USC § 1983, seeking damages for the deprivation and attorney fees.

41.   Defendants' executive orders are based on authority claimed by executive orders issued by Governor Abbott. However, even if Mayor Cain's claim has merit, Governor Abbott never issued an order restricting households to one person from a household traveling to perform essential tasks; the most restrictive orders issued by Governor Abbott stated that individuals could leave their homes only for essential tasks with no stipulation of number of persons per household.

42.   At best, Mayor Cain and the City of Cleburne can claim that the Governor's order might allow a restriction on travel only for individuals to travel for essential

tasks, however they are defined, and also allow local authorities to issue citations to enforce that rule – but there exists no command or authority to restrict such travel to one member per household or otherwise restrict the freedom to assemble for individuals within the same household.

43. Additionally, Governor Abbott's orders give only limited leeway to local authorities, superseding "any conflicting order issued by local officials in response to the COVID-19 disaster, but only to the extent that such a local order restricts essential services allowed by this executive order or allows gatherings prohibited by this executive order."

44. Assuming that Governor Abbott has the power to restrict travel at all, and has the power to legislate *ex cathedra* due to a virus, and to also bestow upon other executives throughout the state that power, Governor Abbott's executive orders do not limit travel for essential tasks to one person per household. And because Governor Abbott did not restrict individual travel, the Ninth Amendment requires the interpretation that such restriction was not intended, and local governments cannot add that restriction.

45. Plaintiff's First Amendment right to peaceably assemble has been infringed by Defendants' executive orders and citation. Even during a pandemic, the State may restrict First Amendment rights only if a compelling state interest exists, and apply the least restrictive means possible when restricting those rights.

46. Assuming that a restriction makes sense for individuals to reduce their time exposed to non-household members, the emergency rule prevents even the assembly of household members inside a privately owned vehicle.

47. Further, if Governor Abbot's executive orders are themselves unenforceable because the Texas Disaster Act of 1975 includes an unconstitutional delegation of legislative power, then Mayor Cain's own executive orders—which derive their authority from Governor Abbot's—lack foundation in Texas law and constitute a violation of Plaintiff's rights to travel and assemble.

48. In citing Plaintiff for violating Mayor Cain's executive order, the City wrongfully infringed Plaintiff's right to peaceably assemble, violating a right protected by the First Amendment, and the right to travel, an unenumerated right recognized as fundamental and thus protected by the Ninth Amendment.[4]

## VI. CONDITIONS PRECEDENT

49. Plaintiff has satisfied all conditions precedent to bring this suit.

## VII. CLAIM: DECLARATORY JUDGMENT

50. Plaintiff seeks Declaratory Judgment under 28 USC § 2201 pursuant to Rule 57 of the Federal Rules of Civil Procedure.

51. Plaintiff asserts that the controversy between the parties would be terminated by a declaratory judgment that Paragraph 7 of Exec. Order No. 7 as referenced

---

[4] Plaintiff also asserts that the right to travel is protected by the privileges and immunities clause.

above was void as violating Plaintiff's constitutional right to travel and assemble;

    a. Defendants have violated Plaintiff's constitutionally protected rights by citing Plaintiff for traveling with his wife;

    b. Plaintiff's citation, received by agents for Cleburne, is void.[5]

## VIII.   DAMAGES

52. Plaintiff seeks damages from Defendants within the jurisdictional limits of this court, including the $406.00 for the citation he received, damages for the deprivation of rights in the amount of $100,000, and attorney fees pursuant to TEX. CIV. PRAC. & REM. CODE §§ 37.009, 38.001, and 42 USC § 1988.

## IX.   PRAYER

53. Plaintiff respectfully prays that the Defendant be cited to appear and answer, and that Plaintiff have the following relief:

    a. Award Plaintiff damages for deprivation of his civil liberties as described above against Defendants Scott Cain and the City of Cleburne.

    b. Reasonable and necessary attorney's fees;

    c. Prejudgment and post judgment interest as provided by law;

    d. Costs of court;

    e. All other relief to which Plaintiff may be entitled in law and equity.

---

[5] *Norton v. Shelby County*, 118 US 425 (1886) ("An unconstitutional act is not law…it imposes no duty…it is, in legal contemplation, as inoperative as though it had never been passed.")

Respectfully submitted,
NORRED LAW, PLLC

By: /s/ Warren V. Norred
Warren V. Norred, Texas Bar No. 24045094
wnorred@norredlaw.com
515 E. Border St., Arlington, Texas 76010
Tel. (817) 704-3984, Fax. (817) 524-6686
Attorney for Plaintiffs