## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS - FORT WORTH DIVISION

| | | |
|---|---|---|
| **ALAN SNIDER,** | § | |
| *Plaintiff,* | § | |
| | § | |
| *v.* | § | |
| | § | |
| **SCOTT CAIN,** | § | Civil Action No. 4:20-cv-670-P |
| **and CITY OF CLEBURNE** | § | |
| *Defendants.* | § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff Alan Snider to present this amended complaint against the Defendant City of Cleburne ("City") and its mayor, Defendant Scott Cain, who deprived Plaintiff of his right to travel freely. This first amendment adds referenced exhibits and a claim under the Texas Constitution.

Summarizing, Plaintiff was cited for entering an "essential business" with his wife, allegedly violating Cleburne Mayor Cain's Emergency Management Plan, which disallowed more than one person per household to travel for essential tasks. Plaintiff received a citation for up to $1,000 and 180 days of jail time.

Plaintiff seeks invalidation of the Order as violating his right to travel, damages under 42 U.S.C. 1983, and a declaration under Texas law that the Defendants' executive order violates fundamental rights protected by the United States Constitution and the Texas Constitution, as Defendants have no basis to prevent joint travel of a husband and wife or their freedom to assemble together.

## I.   PARTIES

1.      Plaintiff Alan Snider is an individual residing at 10208 County Road 418; Grandview, Texas, 76050.  He can be reached through the undersigned counsel.

2.      Defendant Scott Cain is the mayor of the City of Cleburne. He can be served through the City of Cleburne's City Secretary Ivy Peterson at 10 N Robinson Street PO Box 677 Cleburne, TX 76033.

3.      Defendant City of Cleburne is a municipality in the State of Texas and may be served with process by serving the City Secretary Ivy Peterson listed above.

## II.   VENUE AND JURISDICTION

4.      This Court has subject-matter jurisdiction over this suit because it arises under U.S. CONST. amend. I. "Congress shall make no law … abridging … the right of the people peaceably to assemble."  28 U.S.C. § 1331 (Federal Question).

5.      This Court has subject-matter jurisdiction over this suit because it arises under U.S. CONST. amend. XIV. "Nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." 28 U.S.C. § 1331 (Federal Question).

6.      This Court has subject-matter jurisdiction over this suit, based on the fundamental right to travel recognized by Congress in federal law. "Freedom to travel is, indeed, an important aspect of the citizen's "liberty." … [W]e deal here

with a constitutional right of the citizen, a right which we must assume Congress will be faithful to respect." *Kent v. Dulles*, 357 U.S. 116, 130 (1958).

7.     To ensure clarity, this Court has subject-matter jurisdiction over this suit even when the State of Texas is the actor, rather than Congress. "A state law implicates the right to travel when it actually deters such travel." *Attorney Gen. of N.Y. v. Soto-Lopez*, 476 U.S. 898, 903 (1986). *See also Long v. Barr*, No. 1:15-cv-1642, 2020 U.S. Dist. LEXIS 59114, at *48-52 (E.D. Va. 2020).

8.     This action is brought under the Civil Rights Act of 1871, 42 U.S.C. §§ 1983, 1985 which provides redress to those deprived of civil rights under color of state law against those who work and conspire toward that end under 28 U.S.C. § 1343(a)(3)(4) and § 1331.020).

9.     The Court has authority to grant declaratory relief, pursuant to the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. Remedies are available under 42 U.S.C. § 1983.

10.    This Court has supplemental jurisdiction under 28 U.S.C. 1367 over the claim regarding the right to assemble together for common good as protected by the Texas Constitution at art. 1, Sec. 27.

11.    Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b) and 1400(b) because all events giving rise to the described claims occurred within the geographic area of the jurisdiction of the Northern District of Texas.

## III.   FACTS

12.   On the morning of April 18, Alan Snider and his wife visited a Walmart store in Cleburne. He was stopped by a Cleburne Police Officer and cited for "VIOLATION 1: VIOLATION OF EMERGENCY MANAGEMENT PLAN" because he was traveling with his wife. (See Exhibit 1.)

13.   The citation itself states that Mr. Snider violated the Mayor's Emergency Management Plan, which appears to include Executive Order No. 7, issued by Mayor Cain, and requires that all travel for essential services be carried out by a single member of a household, barring some caregiver exemptions, and is enforced by fines up to $1000 and confinement of up to 180 days. Order No. 7 is attached as Exhibit 2 and the relevant paragraph is faithfully copied below:

7.   All persons may leave their residences to provide or obtain essential services or engage in essential daily activities so long as the necessary precautions are maintained to reduce the transmission of COVID-19 and to minimize in-person contact with people who are not in the same household.  Each act by a person to obtain essential services or engage in essential daily activities, with the exception of 7.c (engaging in outdoor activities), shall be practiced by a single member of a household unless there is no guardian or caregiver available to care for other members of the household who require supervision or assistance.

14.   Mayor Cain's Executive Order No. 8, issued April 20 and valid through April 28, also required that a single member of a household be used to obtain essential services. Later executive orders do not contain the single-member restriction on households to obtain essential services.

15.     All of Mayor Cain's executive orders claim power from Governor Abbott's

Executive Orders. When Mayor Cain issued his Order No. 7, Governor Abbott's

Executive Order GA-14 (attached as Exhibit 3) was active, which specifically did

not prohibit people from accessing essential services or engaging in essential daily

activities, as indicated from the third paragraph from page three of the GA-14:

> This executive order does not prohibit people from accessing essential services or
> engaging in essential daily activities, such as going to the grocery store or gas station,
> providing or obtaining other essential services, visiting parks, hunting or fishing, or
> engaging in physical activity like jogging or bicycling, so long as the necessary
> precautions are maintained to reduce the transmission of COVID-19 and to minimize in-
> person contact with people who are not in the same household.

16.     Governor Abbott's executive orders state that local authorities cannot issue

rules which are more restrictive than his own. None of Governor Abbott's orders

include a "one person per household" maximum for traveling on essential tasks,

but rather prohibits restrictions inconsistent with the governor's orders.

> This executive order shall supersede any conflicting order issued by local officials in
> response to the COVID-19 disaster, but only to the extent that such a local order restricts
> essential services allowed by this executive order or allows gatherings prohibited by this
> executive order.  I hereby suspend Sections 418.1015(b) and 418.108 of the Texas
> Government Code, Chapter 81, Subchapter E of the Texas Health and Safety Code, and
> any other relevant statutes, to the extent necessary to ensure that local officials do not
> impose restrictions inconsistent with this executive order, provided that local officials
> may enforce this executive order as well as local restrictions that are consistent with this
> executive order.

17.     Neither Mayor Cain's Order No. 7 nor Governor Abbot's GA-14 Executive

Order is in effect today, but both Governor Abbott and Mayor Cain have shown no

reluctance to return to travel restrictions if COVID-19 or another virus returns.

## IV.   APPLICABLE LEGAL AUTHORITIES

18.    The issue is whether the mayor of a Texas city can issue executive orders preventing and controlling travel based on a delegation of power from a Texas Governor under Section 418 of the Texas Government Code.

**A. The Right to Travel is a recognized constitutionally protected right.**

19.    Texas authorities, including former Attorney General Jim Mattox have recognized that the First Amendment protects an individual's travel as one of the rights protected from excessive governmental limitations, also referencing Sections 6, 8, and 27 of the Texas Bill of Rights. 1987 Tex. AG LEXIS 90, *9-10.

20.    Federal authority also supports judicial enforcement by federal courts to prevent state violation of the right to travel. For example, the Supreme Court held unconstitutional a one-year residence requirement for welfare assistance based on the 14th Amendment's Equal Protection Clause, finding that the challenged laws violated the exercise of the right to interstate travel based on a classification created by the waiting period.

21.    The court held that states have an interest in preventing fraud and reducing costs, but the classification imposed is impermissible where less drastic measures were available to protect state interests.

22.    The Court held that even if Congress appeared to authorize states to adopt such classifications, states may not violate the Equal Protection Clause with such

practices. *Shapiro v. Thompson*, 394 U.S. 618, 621, 89 S. Ct. 1322, 1324 (1969).

23.     Though not enumerated in the Bill of Rights, federal courts have recognized the freedom to travel as a constitutional right. "Freedom to travel is, indeed, an important aspect of the citizen's liberty. "… [W]e deal here with a constitutional right of the citizen, a right which we must assume Congress will be faithful to respect." *Kent v. Dulles*, 357 U.S. 116, 130 (1958).

24.     Some courts have distinguished between constitutional protections as related to interstate and intrastate travel, but in *Johnson v. City of Cincinnati*, the Sixth Circuit held that "[i]n addition to its solid historical foundation, the tremendous practical significance of a right to localized travel also suggests that such a right is secured by substantive due process. The right to travel locally through public spaces and roadways - perhaps more than any other right secured by substantive due process - is an everyday right, a right we depend on to carry out our daily life activities. It is, at its core, a right of function." *Johnson v. City of Cincinnati*, 310 F.3d 484, 498 (6th Cir. 2002). The court quotes Justice Douglas, stating:

> "Freedom of movement at home and abroad, is important for job and business opportunities - for cultural, political, and social activities - for all the commingling which gregarious man enjoys. Those with the right of free movement use it at times for mischievous purposes. But that is true of many liberties we enjoy. We nevertheless place our faith in them, and against restraint, knowing that the risk of abusing liberty so as to give rise to punishable conduct is part of the price we pay for this free society."

*Id*. citing *Aptheker v. Sec. of State*, 378 U.S. 500, 519 (1964)(Douglas, J., conc.).

25.    Additionally, federal courts are empowered to protect the right to travel. "A state law implicates the right to travel when it actually deters such travel." *Attorney Gen. of N.Y. v. Soto-Lopez*, 476 U.S. 898, 903 (1986).

26.    Every case addressing emergency measures in federal court must address the Supreme Court's holding that "at times, under the pressure of great dangers," an individual's liberty may be subjected to some restraint "by reasonable regulations, as the safety of the general public may demand." *Jacobson v. Massachusetts*, 197 U.S. 11, 29 (1905).

27.    Though state actors are quick to cite *Jacobson*, they often neglect the court's careful emphasize that that "if a statute purporting to have been enacted to protect the public health, the public morals or the public safety, has no real or substantial relation to those objects, or is, beyond all question, a plain, palpable invasion of rights secured by the fundamental law, it is the duty of the courts to so adjudge, and thereby give effect to the Constitution." *Id*. at 31. And adding to that exception, the court stated "the police power of a State, whether exercised by the legislature, or by a local body acting under its authority, may be exerted in such circumstances or by regulations so arbitrary and oppressive in particular cases as to justify the interference of the courts to prevent wrong and oppression." *Id.* at 38.

**B. As a rule of construction, the Ninth Amendment clarifies to protect rights.**

28.    The Ninth Amendment was added to the Bill of Rights to quell Federalists' fears that an enumeration of rights would evolve to become the only rights protected. While substantial dispute on the issue exists, the Ninth Amendment is, at the very least, a rule of interpretation and construction which should require courts to interpret statutes so that unenumerated rights are not infringed.[1]

29.    As relevant to this case, even if an executive order is one that *can* be interpreted to restrict travel based on a rational basis, the Ninth Amendment requires avoiding interpretations of laws to restrict travel when a grant of power or law is unclear – else the Ninth Amendment is not a rule of interpretation or construction, but is meaningless.

30.    Thus, if an executive order issued by the Governor allows local authorities to restrict travel in a particular way, and also states that local authorities may only create laws that comport with the Governor's orders, the local authorities only *may* restrict the right to travel in a way approved by the Governor's orders.

31.    Both the power handed down and the local executive issuing its own rules must respect the contours of the long-found existing right to travel, and courts should invalidate any asserted order which infringes such a right, whether issued by a governor or a mayor.

---

[1] ARTICLE: THE NINTH AMENDMENT AS A RULE OF CONSTRUCTION, 111 Colum. L. Rev. 498, 501 (Williams).

**C. Municipalities are not immune to § 1983 claims.**

32.     Cities are not immune from tort liability when they have a policy or custom that results in a constitutional injury. *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 113 S. Ct. 1160, 1162 (1993).

**D. Governor Abbot's executive orders may themselves be unenforceable because the Texas Disaster Act of 1975 includes unconstitutional delegations of the Legislature's lawmaking power.**

33.     The Legislature failed to include adequate and sufficient standards to guide the discretion conferred to members of the executive branch (local or state) in the provisions of the Texas Disaster Act of 1975.

34.     Section 418.108(g) of the Texas Disaster Act of 1975 was added in 2005 following a particularly harsh hurricane season. [2]   According to the bill analysis, C.S.H.B 3111 was filed in response to a "recommendation by the Office of Homeland Security . . . to clarify local officials' authority with regards to evacuation mandates" and "gives the County Judge, or the Mayor of a Municipality the authority to order an evacuation in an emergency and it allows them to control ingress and egress from a disaster area."[3]

35.     The problem, however, is that provisions of the Texas Disaster Act of 1975 ("Act") represent a carte blanc delegation of legislative power, and not the

---

[2] *See* H.B. 3111, 79th R.S. (2005) Senate Research Bill Analysis;
https://capitol.texas.gov/tlodocs/79R/analysis/pdf/HB03111E.pdf; H.B. 3111, 79th R.S. (2005)
House Committee Report; https://capitol.texas.gov/tlodocs/79R/analysis/pdf/HB03111H.pdf
[3] *Id.* House BA

"delegation of power to enforce and apply law." *See Tex. Boll Weevil Eradication Found. v. Lewellen*, 952 S.W.2d 454, 465-66 (Tex. 1997). Furthermore, even though the Texas Supreme Court has said that the Legislature may delegate legislative power to local governments, administrative agencies, and even private entities under certain conditions (*see FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 873 (Tex. 2000), it also well established that that "legislative power cannot be delegated to the executive branch, either directly or to an executive agency." *State v. Rhine*, 297 S.W.3d 301, 306 (Tex. Crim. App. 2009).

36.    The statute empowers local officials to proscribe lawful activities of the citizens of this state in their sole discretion. It allows them to craft policy without any procedural safeguards to prevent arbitrary, unreasonable, or oppressive orders.

37.    It is true that state law designates Mayor Cain as the emergency management director for his political subdivision. TEX. GOV'T CODE § 418.1015(a). While 418.1015(b) provides that as "[a]n emergency management director [the Mayor] serves as the governor's designated agent in the administration and supervision of duties under" Chapter 418 of the Government Code further provides that the mayor, "as [a]n emergency management director may exercise the powers granted to the governor under [Chapter 418 of the Government Code] on an appropriate local scale." TEX. GOV'T CODE § 418.1015(b).

38.    The problem, however, is that many of the powers granted to mayors, county judges, and even the Governor by the Texas Disaster Act of 1975 are prohibited by the Constitution. For example, in contravention of Tex. Const, art. I, § 28, Sec. 418.019 of the Act gives the governor the power "suspend or limit the sale, dispensing, or transportation of . . . firearms . . ." TEX. GOV. CODE § 418.019.

39.    Moreover, Sec. 418.173 authorizes the governor, mayors, and county judges to make the violation of their executive orders a criminal offense punishable by a fine not to exceed $1,000 or confinement in jail for up to 180 days. TEX. GOV. CODE § 418.173(a)-(b). This provision is an improper delegation of the power to define crimes—a power that rests exclusively with the Legislature. *See Neil v. State*, No. 12-16-00236-CR, 2017 Tex. App. LEXIS 8862, at *3 (Tex. App.—Tyler Sep. 20, 2017) ("The legislature has the exclusive authority to define crimes and to designate the punishments for those crimes."); *Rodriguez v. State*, No. 12-16-00238-CR, 2017 Tex. App. LEXIS 3898, at *3 (Tex. App.—Tyler Apr. 28, 2017) ("The authority to define crimes, and to fix punishments for those crimes, is vested exclusively in the legislature.").

40.    As the Texas Supreme Court has stated, "[W]hen constitutional rights are at stake, courts cannot automatically defer to the judgments of other branches of government." *In re Salon A La Mode*, 63 Tex. Sup. Ct. J. 1123, 1123, 2020 Tex. LEXIS 389, at *3 (Tex. May 5, 2020).

41.    Further, courts recognize unconstitutional attempts to exercise police powers

not conferred by the Constitution as invalid. *Constantin v. Smith*, 57 F.2d 227, 237-

38 (E.D. Tex. 1932) (*aff'd by Sterling v. Constantin*, 53 S. Ct. 190, 197 (1932))

([If] the actions of the Governor and of his subordinates here complained of are

valid exercises of the police power of the state, they are not contrary to, they

accord with, they do not violate, they conform to, the law. On the contrary, *if they*

*represent attempts to exercise police power not conferred upon the Governor, they*

*are invalid under both Constitutions.*") (emphasis added).

### V.    CLAIM: DEPRIVATION OF DUE PROCESS (42 USC § 1983)

42.    Plaintiff seeks damages from Defendants City of Cleburne and Scott Cain

for their infringement of Plaintiff's right to travel and assemble under 42 USC §

1983, seeking damages for the deprivation and attorney fees.

43.    Defendants' executive orders are based on authority claimed by executive

orders issued by Governor Abbott. However, even if Mayor Cain's claim has

merit, Governor Abbott never issued an order restricting households to one person

from a household traveling to perform essential tasks; the most restrictive orders

issued by Governor Abbott stated that individuals could leave their homes only for

essential tasks with no stipulation of number of persons per household.

44.    At best, Mayor Cain and the City of Cleburne can claim that the Governor's

order might allow a restriction on travel only for individuals to travel for essential

tasks, however they are defined, and also allow local authorities to issue citations to enforce that rule – but there exists no command or authority to restrict such travel to one member per household or otherwise restrict the freedom to assemble for individuals within the same household.

45.    Additionally, Governor Abbott's orders give only limited leeway to local authorities, superseding "any conflicting order issued by local officials in response to the COVID-19 disaster, but only to the extent that such a local order restricts essential services allowed by this executive order or allows gatherings prohibited by this executive order."

46.    Assuming that Governor Abbott has the power to restrict travel at all, and has the power to legislate *ex cathedra* due to a virus, and to also bestow upon other executives throughout the state that power, Governor Abbott's executive orders do not limit travel for essential tasks to one person per household. And because Governor Abbott did not restrict individual travel, the Ninth Amendment requires the interpretation that such restriction was not intended, and local governments cannot add that restriction.

47.    Plaintiff's First Amendment right to peaceably assemble has been infringed by Defendants' executive orders and citation. Even during a pandemic, the State may restrict First Amendment rights only if a compelling state interest exists, and apply the least restrictive means possible when restricting those rights.

48.     Assuming that a restriction on the number of individuals per household permitted to perform essential business is a reasonable step taken in pursuit of reducing household members' exposure to non-household members, the emergency rule prevents even the assembly of household members inside their privately owned vehicle.

49.     Further, if Governor Abbot's executive orders are themselves unenforceable because the Texas Disaster Act of 1975 includes an unconstitutional delegation of legislative power, then Mayor Cain's own executive orders—which derive their authority from Governor Abbot's—lack foundation in Texas law and constitute a violation of Plaintiff's rights to travel and assemble.

50.     In citing Plaintiff for violating Mayor Cain's executive order, the City wrongfully infringed Plaintiff's right to peaceably assemble, violating a right protected by the First Amendment, and the right to travel, an unenumerated right recognized as fundamental and thus protected by the Ninth Amendment.[4]

## VI.    CONDITIONS PRECEDENT

51.     Plaintiff has satisfied all conditions precedent to bring this suit.

---

[4] Plaintiff also asserts that the right to travel is protected by the privileges and immunities clause.

## VII.   CAPABLE OF REPETITION ESCAPING REVIEW

52.   Plaintiff asserts that the conditions as described herein are capable of repetition, as several states have opened their economy and then recently acted to tighten movement of their residents. Thus, a change in the present executive orders should not moot this case, as it is capable of repetition and evading review.

## VIII.   CLAIM: DECLARATORY JUDGMENT

53.   Plaintiff seeks Declaratory Judgment under 28 USC § 2201 under Rule 57.

54.   Plaintiff asserts that the controversy between the parties would be terminated by a declaratory judgment that Paragraph 7 of Order No. 7 issued by the Office of the Mayor of Cleburne is void as violating Plaintiff's constitutional right to travel and assemble, and Defendants have violated this fundamental right by citing Plaintiff for traveling with his wife. Further, Plaintiff's citation received from agents of the City of Cleburne is void.[5]

## IX.   CLAIM: VIOLATION OF TEXAS' RIGHT TO ASSEMBLE

55.   Plaintiff seeks a permanent injunction against Defendants to prevent them from enforcing the one-person travel rule, as the rule violates the right to assemble as protected by Art. 1, section 27.

56.   The United States Constitution's right to assemble is generally in connection

---

[5] *Norton v. Shelby County*, 118 US 425 (1886) ("An unconstitutional act is not law…it imposes no duty…it is, in legal contemplation, as inoperative as though it had never been passed.")

with political matters; the Texas Constitution also protects the rights of citizens to assemble together for their common good in a peaceable manner. *Zaatari v. City of Austin*, No. 03-17-00812-CV, 2019 Tex. App. LEXIS 10290, at *40-48 (Tex. App.—Austin Nov. 27, 2019) (holding that the Texas Constitution's right to assemble has a "common good" prong that the United States Constitution does not, and finding Austin's short-term rental ordinance infringed on the right to assembly).

57.    Because paragraph 7 of the Cleburne Order limits assembly on private property without regard to the peacefulness of or reasons for the assembly, this Court should similarly find that it violates Plaintiff's fundamental rights, declare it invalid, and enjoin its use as applied in this case.

## X.   PRAYER

58.    Plaintiff respectfully prays that the Defendant be cited to appear and answer, and that Plaintiff have the following relief:

a.  An award of damages for deprivation of fundamental rights as described above against Defendants in an amount determined by the trier of fact;

b.  Dismissal of the $406 citation Plaintiff received;

c.  A permanent injunction preventing enforcement of ORDER No. 7 issued by the Office of the Mayor of Cleburne, Texas;

d.  Reasonable and necessary attorney's fees pursuant to TEX. CIV. PRAC. & REM. CODE §§ 37.009 and 42 USC § 1988;

e.  Costs of court, including prejudgment and post judgment interest as provided by law;

f.  All other relief to which Plaintiff may be entitled in law and equity.

Respectfully submitted,
NORRED LAW, PLLC

By:  /s/ Warren V. Norred
Warren V. Norred, Texas Bar No. 24045094
wnorred@norredlaw.com
515 E. Border St., Arlington, Texas 76010
Tel. (817) 704-3984, Fax. (817) 524-6686
Attorney for Plaintiffs

CERTIFICATE OF SERVICE – I certify that I served defendants with this document on July 15, 2020, by email to Christopher Klement, who has identified himself as counsel for defendants, by email to chris@brownfoxlaw.com.

By:  /s/ Warren V. Norred

Attachments:
Exhibit 1 – Citation E0021966
Exhibit 2 – ORDER No. 7 issued by the Office of the Mayor of Cleburne, Texas
Exhibit 3 – Executive Order GA-14

## Cleburne Police Dept.

**Citation E0021966**

County **JOHNSON**                                  Date/Time **04/18/2020 08:49**

### VIOLATOR

First Name: **ALAN**        Middle: **SHANE**        Last Name: **SNIDER**
Address: **10208 CR 418**                                  Phone
City: **\*GRANDVIEW**        State: **TX**                    Zip: **76050**
Hgt **600**        Wgt        Sex: **M**    Eyes: **BLU**    Hair: **BRO**    Race: **W**
Employer                                                    City:
DL #: **3420567**            DL State: **TX**        CDL: **No**
DL Expires                  Class:                  DOB: **01/13/1983**

### VEHICLE

Veh Yr:                Veh Tag:                State: **TX**
Color:                Comm Veh: **No**            Haz Mat: **No**
Make:                Model:

### VIOLATIONS

Citation VIOLATION 1: VIOLATION OF EMERGENCY MANAGEMENT PLAN

### LOCATION AND VIOLATION INFORMATION

Location: **1616 W HENDERSON ST**
Direction:                        Turn:
Alleged:                    Limit:                Spd Det:
Const. Zone: **No**            School Zone: **No**        Accident: **No**
Search: **No Search**        Contraband:
Attempted and unable to verify Financial Responsibility    **NA**
Issued By: **Officer Ishmael Badge #: M006**

*I hereby acknowledge receipt of this notification and promise to appear in Municipal Court.*

Signature _____

This is not a plea of guilty.

### COURT INFORMATION

**MUNICIPAL COURT**            Appearance Date: **05/04/2020 before 4:00 PM**
**303 W. Henderson**
**P.O. Box 657**
**Cleburne, TX 76033**
**817-645-0925**
**Pay Online: www.cleburne.net**

**\* A CONVICTION OF AN OFFENSE UNDER A TRAFFIC LAW OF THIS STATE OR A POLITICAL SUBDIVISION OF THIS STATE MAY RESULT IN THE ASSESSMENT ON YOUR DRIVERS LICENSE OF A SURCHARGE UNDER THE DRIVER RESPONSIBILITY PROGRAM.**

#### READ INSTRUCTIONS CAREFULLY

1. If you think you are NOT GUILTY of the violation(s) on this citation and want a hearing, you must appear at the Cleburne Municipal Court of Record located at: 303 West Henderson, Cleburne, Texas 76033. Court hours of operation are: Monday through Friday 8am-4pm.

2. If you want to plead GUILTY/NO CONTEST and pay the citation(s); contact the court for fine/fee information at 817-645-0925, or pay via the internet @ www.cleburne.net. The court accepts: cash/check/money orders/debit or credit cards (MasterCard/Visa) as forms of payment. PLEASE DO NOT MAIL CASH.

3. FAILURE TO APPEAR on or before the appearance date listed above could result in additional charges and may result in a warrant(s) being issued for your arrest.

4. If you wish to request a DRIVING SAFETY PROGRAM for the dismissal of this citation; you must contact the court to see if you qualify with the Texas State requirements for driving safety.



*Office of the Mayor*
*City of Cleburne, Texas*

# ORDER No. 7

**WHEREAS,** in December 2019 a novel coronavirus now designated COVID-19, was detected in Wuhan City, Hubei Province, China. Symptoms of COVID-19 include fever, cough, and shortness of breath. Outcomes have ranged from mild to severe illness, and in some cases death; and

**WHEREAS,** on March 11, 2020 the World Health Organization (WHO) declared COVID-19 as a pandemic; and

**WHEREAS,** on March 13, 2020, pursuant to his powers as Governor of the State of Texas, Greg Abbott has issued a proclamation certifying that COVID-19 poses an imminent threat of disaster in the state and declaring a state of disaster for all counties in Texas; and

**WHEREAS,** I, Scott Cain, the Mayor of the City of Cleburne has determined that extraordinary measures must be taken to respond quickly, prevent and alleviate the suffering of people exposed to and those infected with the virus, as well as those that could potentially be infected or impacted by COVID-19, and to protect or rehabilitate property; and

**WHEREAS,** I, Scott Cain, the Mayor of the City of Cleburne issued a Declaration of Local Disaster on March 13, 2020 and City Council on March 13, 2020, approved Resolution No. RS03-2020-32 extending the Declaration of Local Disaster to March 29, 2020; and

**WHEREAS,** the City Council on March 24, 2020, approved Resolution No. RS03-2020-35 extending the Declaration of Local Disaster to April 14, 2020; and

**WHEREAS,** the City of Cleburne's Emergency Management Plan is activated; and

**WHEREAS,** I hereby issue this Order No. 7 to replace all prior Orders to ensure the protection of the general public in the City of Cleburne.

**NOW THEREFORE, BE IT PROCLAIMED BY THE CITY OF CLEBURNE, TEXAS:**

1. That the following Orders shall supplement my March 13, 2020 Declaration and replaces any prior order given thereto and shall remain in effect until April 14, 2020, unless continued or renewed by the City Council, or modified by further Order.

2. Pursuant to Section 418.108(c) of the Government Code, this Order shall be attached to and made part of the Declaration of Disaster and filed promptly with the City Secretary, and shall be given prompt and general publicity.

3. Pursuant to Section 122.006 of the Texas Health and Safety Code, this Order authorizes the City to take any actions necessary to promote health and suppress disease and fining those who do not comply with the City's rules.

4. <u>Stay Safe at Home.</u>  All individuals currently living in the City of Cleburne, Texas are hereby ordered to stay at their place of residence except as permitted in this Order and by the Executive Order of the Governor of the State of Texas.  For the purpose of this Order, residences shall also include hotels, motels, shared rentals, and similar facilities.

5. <u>Essential Services.</u>  Per the Executive Order of the Governor, "Essential Services" shall consist of everything listed by the U.S. Department of Homeland Security in its Guidance on the Essential Critical Workforce, Version 2.0, plus religious services conducted in churches, congregations, and houses of worship.  Other essential services may be added to the list with the approval of the Texas Division of Emergency Management (TDEM).  TDEM shall maintain an online list of essential services, as specified in the Governors Executive Order and in any approved additions.  Requests for additions should be directed to TDEM at EssentialServices@tdem.texas.gov or by visiting www.tdem.texas.gov/essentialservices.

6. <u>Gatherings.</u>  All public or private gatherings of any number of people occurring outside a single household or living unit are prohibited, except as otherwise provided by this Order and the Executive Order of the Governor of the State of Texas.  Nothing in this Order prohibits the gathering of members of a household or living unit.

   For the purpose of essential work related activities, this declaration does not prohibit gatherings of people in multiple, separate enclosed spaces (including separate cubicles) in a single building such as different floors of a multi-level office, residential building, or hotel, so long as 10 people are not present in any single space at the same time, there is sufficient space to practice social distancing, and the Guidelines from the President and the CDC are being followed to include practicing good hygiene, environmental cleanliness and sanitation, implementing social distancing, and working from home if possible.  Social distancing as used in this Order means maintain separation from others by a distance of 6 feet or more.

   For gatherings for church services, weddings, and funerals, either indoors or outdoors, consistent with the Executive Order of the Governor and Guidelines from the President and the CDC this Order hereby limits the gatherings to a maximum of 10 individuals total so long as there is sufficient space to practice social distancing.  Social distancing as used in this Order means maintain separation from others by a distance of 6 feet or

Exhibit 2, p. 3

more.  The limit of 10 applies to the cumulative of all staff and participants present.

7.  All persons may leave their residences to provide or obtain essential services or engage in essential daily activities so long as the necessary precautions are maintained to reduce the transmission of COVID-19 and to minimize in-person contact with people who are not in the same household.  Each act by a person to obtain essential services or engage in essential daily activities, with the exception of 7.c (engaging in outdoor activities), shall be practiced by a single member of a household unless there is no guardian or caregiver available to care for other members of the household who require supervision or assistance.

Essential daily activities includes the following:
   a.  To engage in activities or perform tasks essential to their health and safety, or to the health and safety of their family or household members (for example, obtaining medical supplies or medication, visiting a health care professional, or obtaining supplies needed to work from home).
   b.  To obtain necessary services or supplies for themselves and their family or household members, or to deliver those services or supplies to others (for example, food, pet supply, and any other household consumer products, and products necessary to maintain the safety, sanitation, and essential operation of residences).
   c.  To engage in outdoor activity, provided the individuals comply with gathering and social distancing requirements of six feet (for example, walking, bicycle riding, hiking or running).
   d.  To care for a family member or pet in another household.
   e.  To go to work and provide services.

8.  <u>Social Distancing.</u>  To the extent individuals are using shared or outdoor spaces, they must at all times as reasonably as possible maintain social distancing of at least six feet from any other person when they are outside of their residence.

9.  <u>Elective Medical Procedures.</u> That all elective medical, surgical, and dental procedures are prohibited anywhere in the City of Cleburne. Hospitals, ambulatory surgery centers, dental offices, and other medical facilities are directed to identify procedures that are deemed "elective" by assessing which procedures can be postponed or cancelled based on patient risk considering the emergency need for redirection of resources to COVID-19 response.

10. <u>Restaurants.</u>  In accordance with the Guidelines from the President and the CDC, and by Executive Order of the Governor of the State of Texas, people shall avoid eating or drinking at bars, restaurants, and food courts, or visiting gyms or massage parlors; provided, however, that the use of drive-thru, pickup, or delivery options is allowed and highly encouraged throughout the limited duration of this executive order.  The restriction of delivery or carry out does not apply to cafes and

restaurants located within hospital and medical facilities.

11. <u>Essential Retail.</u> Only essential retail shall be allowed, and all other retail is prohibited. Essential retail shall only include the following unless otherwise defined by the U.S. Department of Homeland Security in its Guidance on the Essential Critical Workforce, Version 2.0, and the Texas Division of Emergency Management (TDEM) as required by the Executive Order of the Governor:

   a. Food service providers, including grocery stores, warehouse stores, bodegas, gas stations, convenience stores, home improvement stores and other retail stores that sell food products and household staples, pet and feed stores.
   b. Businesses not open to the public that ship or deliver groceries, food, goods or services directly to residences.
   c. Pawn shops and gun stores.
   d. Schools and other entities that typically provide free services to students or members of the public on a pick-up and take-away basis only.
   e. Laundromats, dry cleaners, and laundry service providers.
   f. Businesses that provide for the delivery, service of, or preparation of vehicles.
   g. Businesses that supply products needed for people to work from home, including businesses providing mail and shipping and post office box.
   h. Businesses that supply products necessary for essential repairs and maintenance of a home or business.
   i. Hotel, motels, and shared rental units, except that all bars, cafes, or restaurants in hotels, motels, and shared rental units are closed except for pick-up and room service.

12. <u>Businesses Closed.</u>  That this Order hereby orders the closure of all non-essential businesses, unless defined as essential by the U.S. Department of Homeland Security in its Guidance on the Essential Critical Workforce, Version 2.0, to include, but not limited to, commercial amusement and entertainment venues; theaters; gyms; group or individual garage sale events; door to door solicitation; fitness classes; yoga and personal training facilities; similar facilities and classes; tattoo and piercing parlors and tanning salons; public auctions (other than livestock); residential meeting spaces; event centers; hotel meeting spaces and ballrooms; outdoor plazas and markets; barber shops; hair salons; nail salons; spas; massage parlors; estheticians and related personal care businesses; indoor malls; bars, lounges, taverns, and private clubs; all of which businesses are closed and no occupancy is permitted.

13. <u>Convenience Stores.</u>  For convenience stores, this Order hereby limits the occupancy to a maximum of 10 individuals inside the store at any one time and requires convenience store operators to enact and ensure social distancing of a minimum of six (6) feet between all customers. The limit of 10 applies to the cumulative of all staff and patrons present.

14. <u>Occupancy Other.</u>  So long as the Guidelines from the President and the CDC are being followed to include practicing good hygiene, environmental cleanliness and sanitation, implementing social distancing, and working from home if possible, the occupancy or

gathering limit does not apply to office buildings, government buildings, critical infrastructure such as airport and transit facilities, residential buildings, outside refueling stations at convenience stores, manufacturing and industrial locations, non-profit service providers, homeless and emergency shelters, day cares, and medical facilities. Livestock auctions shall be permitted to have more than 10 individuals on site provided the number of individual bidders is limited to 10 while in the auction area or any other rooms or areas (limit of 10 per area) and measures are taken to ensure social distancing.

15. <u>Public Areas Closed</u>.  This Order authorizes the City Manager to close any public area or facility as needed to promote the health and safety of the community and protect the wellbeing of city employees.

16. <u>Groceries and Supplies</u>.  This Order requires all public facilities providing groceries, home improvement items, animal and household supplies, or pharmaceutical supplies to:

    (a)    provide hand sanitizer at all entry points;

    (b)    provide a process to sanitize and wipe down all grocery carts and baskets which are then to be distributed to customers in a controlled area(s);

    (c)    post signage at all parking lot cart gathering locations instructing customers to only use sanitized carts and baskets being distributed at the controlled area(s) of the store;

    (d)    enact and ensure social distancing for all customers at entry points, checkout lines and all other areas both inside and outside the facility at all times including prior to opening times;

    (e)    post a list of all reasonable limits of purchases at all entry points;

    (f)    limit toilet paper purchases to 12 rolls or one package, whichever is greater, per person, per purchase; and

17. <u>Events Prohibited</u>.  That this Order prohibits all events, public or private.

18. <u>Nursing Homes.</u>  Nursing homes, retirement homes, and long-term care facilities are instructed to prohibit non-essential visitors from accessing their facilities unless to provide critical assistance or for end-of-life visitation.

19. <u>Positive Test Result.</u>  If someone in a household has tested positive for coronavirus, the household is ordered to isolate at home until such time as otherwise directed by County or State health officials.

20. <u>Enforcement</u>.  That this Order hereby authorizes the use of all lawfully available enforcement tools to carry out this order including a fine of up to $1,000.00 and imprisonment of up to 180 days for each violation.

21. <u>Recommendations</u>.  That this Order sets forth strong recommendations, attached hereto, for the purpose of mitigating the spread of COVID-19.

22. That this Order shall take effect at 12:01 a.m., April 2, 2020.

**NOW, THEREFORE BE IT SO DECLARED AND ORDERED** this the 1ˢᵗ day of April 2020.



*In witness whereof I have hereunto set my hand and caused the seal of this city to be affixed.*

Scott Cain, Mayor

**CITY OF CLEBURNE**
**RECOMMENDATIONS FOR MITIGATING**
**THE SPREAD OF COVID-19**

*The City of Cleburne strongly recommends, as may be applicable, the following for <u>Grocery Stores and Home Improvement and Supply stores</u>:*

1) Establish clear barriers, such as plexiglass, between the checkout clerks and the customers.
2) Encourage the use of drive-thru, curbside, or delivery services.
3) Partner with churches who can shop for, pick-up and/or deliver groceries to the elderly and those with underlying health conditions.
4) Encourage customers to not purchase more than they need and consider placing limits on certain items (see suggested list below) to ensure fair and equitable distribution.
5) Provide dedicated shopping times for those who are over the age of 60, handicapped persons who need assistance shopping, and one caregiver.

*The City of Cleburne strongly recommends the following for <u>Funeral Homes</u>:*

1. Have patrons refrain from close personnel contact and practice social distancing of six feet (6').
2. Provide hand sanitizer at the entrance to the funeral home and ask all patrons to wash their hands prior to arrival.
3. Spread visitations out throughout the day instead of compressing them into smaller increments of time during the evening hours.
4. Discourage patrons from congregating in area such as foyers, living rooms or staterooms.
5. Encourage patrons to make their visits brief so everyone will be able to participate in the visitation while meeting current limitations on public gatherings or occupancy.
6. Should patrons have questions for funeral home staff or the director, please encourage them to call first as some questions may be addressed over the phone, as opposed to in person.
7. Seat patrons in such a manner that parties are practicing social distancing and remain a minimum of six feet (6') apart.



GOVERNOR GREG ABBOTT

March 31, 2020

FILED IN THE OFFICE OF THE
SECRETARY OF STATE
___2 PM___ O'CLOCK

MAR 3 1 2020

Secretary of State

The Honorable Ruth R. Hughs
Secretary of State
State Capitol Room 1E.8
Austin, Texas  78701

Dear Secretary Hughs:

Pursuant to his powers as Governor of the State of Texas, Greg Abbott has issued the following:

Executive Order No. GA-14 relating to statewide continuity of essential services
and activities during the COVID-19 disaster.

The original executive order is attached to this letter of transmittal.

Respectfully submitted,

Gregory S. Davidson
Executive Clerk to the Governor

GSD/gsd

Attachment

# 𝔈𝔵𝔢𝔠𝔲𝔱𝔦𝔳𝔢 𝔒𝔯𝔡𝔢𝔯

### BY THE
### GOVERNOR OF THE STATE OF TEXAS

**Executive Department**
**Austin, Texas**
**March 31, 2020**

**EXECUTIVE ORDER**
**GA 14**

*Relating to statewide continuity of essential services and activities*
*during the COVID-19 disaster.*

WHEREAS, I, Greg Abbott, Governor of Texas, issued a disaster proclamation on March 13, 2020, certifying under Section 418.014 of the Texas Government Code that the novel coronavirus (COVID-19) poses an imminent threat of disaster for all counties in the State of Texas; and

WHEREAS, the Commissioner of the Texas Department of State Health Services (DSHS), Dr. John Hellerstedt, has determined that COVID-19 represents a public health disaster within the meaning of Chapter 81 of the Texas Health and Safety Code; and

WHEREAS, I have issued numerous executive orders and suspensions of Texas laws in response to the COVID-19 disaster, aimed at protecting the health and safety of Texans and ensuring an effective response to this disaster; and

WHEREAS, I issued Executive Order GA-08 on March 19, 2020, mandating certain obligations for Texans in accordance with the President's Coronavirus Guidelines for America, as promulgated by President Donald J. Trump and the Centers for Disease Control and Prevention (CDC) on March 16, 2020, which called upon Americans to take actions to slow the spread of COVID-19 for 15 days; and

WHEREAS, Executive Order GA-08 is subject to expiration at 11:59 p.m. on April 3, 2020, absent further action by the governor; and

WHEREAS, on March 29, 2020, to avoid scenarios that could lead to hundreds of thousands of deaths, the President announced that, based on advice from Dr. Anthony Fauci and Dr. Deborah Birx, the restrictive social-distancing Guidelines should extend through April 30, 2020; and

WHEREAS, DSHS Commissioner Dr. Hellerstedt and White House Coronavirus Response Coordinator Dr. Birx say that the spread of COVID-19 can be reduced by minimizing social gatherings; and

WHEREAS, on March 28, 2020, the U.S. Department of Homeland Security issued its Guidance on the Essential Critical Infrastructure Workforce, Version 2.0, which provides an advisory list of critical-infrastructure sectors, workers, and functions that should continue during the COVID-19 response; and

WHEREAS, for state agencies and their employees and agents, the Office of the Attorney General of Texas has advised that local restrictions issued in response to the COVID-19 disaster do not apply to restrict the conduct of state business; and

FILED IN THE OFFICE OF THE
SECRETARY OF STATE
_____ 2 PM _____ O'CLOCK

MAR 3 1 2020

WHEREAS, all government entities and businesses should be allowed to continue providing essential services during the COVID-19 disaster, and all critical infrastructure should be allowed to remain operational; and

WHEREAS, the "governor is responsible for meeting … the dangers to the state and people presented by disasters" under Section 418.011 of the Texas Government Code, and the legislature has given the governor broad authority to fulfill that responsibility; and

WHEREAS, under Section 418.012, the "governor may issue executive orders … hav[ing] the force and effect of law;" and

WHEREAS, under Section 418.016(a), the "governor may suspend the provisions of any regulatory statute prescribing the procedures for conduct of state business … if strict compliance with the provisions … would in any way prevent, hinder, or delay necessary action in coping with a disaster;" and

WHEREAS, under Section 418.017(a), the "governor may use all available resources of state government and of political subdivisions that are reasonably necessary to cope with a disaster;" and

WHEREAS, under Section 418.018(c), the "governor may control ingress and egress to and from a disaster area and the movement of persons and the occupancy of premises in the area;" and

WHEREAS, under Section 418.173, failure to comply with any executive order issued during the COVID-19 disaster is an offense punishable by a fine not to exceed $1,000, confinement in jail for a term not to exceed 180 days, or both fine and confinement.

NOW, THEREFORE, I, Greg Abbott, Governor of Texas, by virtue of the power and authority vested in me by the Constitution and laws of the State of Texas, do hereby order the following on a statewide basis effective 12:01 a.m. on April 2, 2020, and continuing through April 30, 2020, subject to extension based on the status of COVID-19 in Texas and the recommendations of the CDC and the White House Coronavirus Task Force:

In accordance with guidance from DSHS Commissioner Dr. Hellerstedt, and to achieve the goals established by the President to reduce the spread of COVID-19, every person in Texas shall, except where necessary to provide or obtain essential services, minimize social gatherings and minimize in-person contact with people who are not in the same household.

"Essential services" shall consist of everything listed by the U.S. Department of Homeland Security in its Guidance on the Essential Critical Infrastructure Workforce, Version 2.0, plus religious services conducted in churches, congregations, and houses of worship. Other essential services may be added to this list with the approval of the Texas Division of Emergency Management (TDEM). TDEM shall maintain an online list of essential services, as specified in this executive order and in any approved additions. Requests for additions should be directed to TDEM at EssentialServices@tdem.texas.gov or by visiting www.tdem.texas.gov/essentialservices.

In providing or obtaining essential services, people and businesses should follow the Guidelines from the President and the CDC by practicing good hygiene, environmental cleanliness, and sanitation, implementing social distancing, and working from home if possible. In particular, all services should be provided through remote telework from

FILED IN THE OFFICE OF THE
SECRETARY OF STATE
___2 PM___ O'CLOCK

MAR 3 1 2020

home unless they are essential services that cannot be provided through remote telework. If religious services cannot be conducted from home or through remote services, they should be conducted consistent with the Guidelines from the President and the CDC by practicing good hygiene, environmental cleanliness, and sanitation, and by implementing social distancing to prevent the spread of COVID-19.

In accordance with the Guidelines from the President and the CDC, people shall avoid eating or drinking at bars, restaurants, and food courts, or visiting gyms, massage establishments, tattoo studios, piercing studios, or cosmetology salons; provided, however, that the use of drive-thru, pickup, or delivery options for food and drinks is allowed and highly encouraged throughout the limited duration of this executive order.

This executive order does not prohibit people from accessing essential services or engaging in essential daily activities, such as going to the grocery store or gas station, providing or obtaining other essential services, visiting parks, hunting or fishing, or engaging in physical activity like jogging or bicycling, so long as the necessary precautions are maintained to reduce the transmission of COVID-19 and to minimize in-person contact with people who are not in the same household.

In accordance with the Guidelines from the President and the CDC, people shall not visit nursing homes, state supported living centers, assisted living facilities, or long-term care facilities unless to provide critical assistance as determined through guidance from the Texas Health and Human Services Commission.

In accordance with the Guidelines from the President and the CDC, schools shall remain temporarily closed to in-person classroom attendance and shall not recommence before May 4, 2020.

This executive order shall supersede any conflicting order issued by local officials in response to the COVID-19 disaster, but only to the extent that such a local order restricts essential services allowed by this executive order or allows gatherings prohibited by this executive order.  I hereby suspend Sections 418.1015(b) and 418.108 of the Texas Government Code, Chapter 81, Subchapter E of the Texas Health and Safety Code, and any other relevant statutes, to the extent necessary to ensure that local officials do not impose restrictions inconsistent with this executive order, provided that local officials may enforce this executive order as well as local restrictions that are consistent with this executive order.

This executive order supersedes Executive Order GA-08, but not Executive Orders GA-09, GA-10, GA-11, GA-12, or GA-13, and shall remain in effect and in full force until April 30, 2020, unless it is modified, amended, rescinded, or superseded by the governor.

Given under my hand this the 31st day of March, 2020.

GREG ABBOTT
Governor

FILED IN THE OFFICE OF THE
SECRETARY OF STATE
___2 PM___O'CLOCK

MAR 3 1 2020

ATTESTED BY:

RUTH R. HUGHS
Secretary of State

FILED IN THE OFFICE OF THE
SECRETARY OF STATE
___2 PM___ O'CLOCK

MAR 3 1 2020